The CITY OF ATLANTA et al., Plaintiffs,

and

Fulton County et al., Intervenors on behalf of Plaintiffs,

v.

The METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY, a Public Corporation, Defendant,

and

DeKalb County, a political subdivision of the State of Georgia, Intervenor on behalf of Defendant.

Civ. A. No. C80–1108A.

United States District Court,
N. D. Georgia,
Atlanta Division.

July 11, 1980.

Ferrin Y. Mathews, Ralph H. Witt, Isabel Gates Webster, Atlanta, Ga., for The City of Atlanta and Maynard Jackson.

Robert G. Young, Webb, Young, Daniel & Murphy, Atlanta, Ga., for Fulton County.

Kutak, Rock & Huie, W. Stell Huie, John R. Lowery, Atlanta, Ga., for The Metropolitan Atlanta Rapid Transit Authority.

Robert H. Walling, Gail C. Flake, Decatur, Ga., for DeKalb County.

Ransom & Axam, Tony L. Axam, Kenneth L. Secret, Atlanta Legal Aid Society, John S. Graettinger, Jr., Atlanta, Ga., for all other intervenors on behalf of plaintiffs.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SHOOB, District Judge.

### INTRODUCTION

On June 23, 1980 the Board of Directors of the Metropolitan Atlanta Rapid Transit Authority (MARTA) approved an increase of twenty-five (25) cents in the general passenger fare for the MARTA bus/rail system. The fare increase was scheduled to go into effect on July 1, 1980, the first day of MARTA's 1981 fiscal year. On June 30, 1980, plaintiffs brought this action and asked this Court for an order temporarily restraining any increase in the MARTA fare. After hearing argument by plaintiffs and defendant, the Court granted the request for a temporary restraining order.

Plaintiffs were granted leave to amend their complaint on July 3, 1980. Also on July 3, 1980, this Court allowed Fulton County, Dorothy Bolden, The National Domestic Workers Union of America, Ethel Matthews and The National Welfare Rights Organization to intervene in this action on behalf of plaintiffs and to file complaints. On July 7, 1980 the Court granted DeKalb County leave to intervene in the action on behalf of defendant. Plaintiffs and the intervenors on their behalf seek injunctive relief against the fare increase and certain declaratory relief.

Presently before the Court is plaintiffs' request for a preliminary injunction. In order to prevail on their request plaintiffs must establish (1) that there is a substantial likelihood that they will succeed on the merits of the case, (2) that there is a substantial threat that they will suffer irreparable injury if a preliminary injunction is not granted, (3) that such threatened injury outweighs any harm which a preliminary injunction might do to MARTA, and (4) that a preliminary injunction would not disserve the public interest. *Canal Authority v. Callaway*, 489 F.2d 567 (5th Cir. 1974). In determining whether plaintiffs have made this showing, the Court has considered the briefs submitted by the parties and the intervenors along with the argument, testimony and documentary evidence presented on July 3, 1980 at a hearing on plaintiffs' request for a preliminary injunction.

### ISSUES PRESENTED

Plaintiffs and the intervenors on their behalf have set forth a number of claims in their various complaints. In order to determine whether there is a substantial likelihood that plaintiffs will prevail on the merits of this case, the Court must consider each of those claims. The Court identifies the following as the issues which are before it:

1. Whether the increase in membership of the MARTA Board of Directors pursuant to state law denied equal protection of the laws and due process of law to the citizens

of Atlanta in that it diluted their representation on that board.

2. Whether the fare increase would constitute a denial of equal protection to the citizens of Atlanta because the citizens of Atlanta, as a group, earn less than the individuals who live in suburbs surrounding the city.

3. Whether the fare increase without approval by the City of Atlanta and the Counties of Fulton and DeKalb would violate the Rapid Transit Contract and Assistance Agreement.

4. Whether the increase in membership of the MARTA Board of Directors pursuant to state law or the budgetary and expenditure restraints imposed on MARTA by state law unconstitutionally impair obligations of contract.

5. Whether the MARTA Board of Directors is illegally constituted, and its actions therefore invalid and violative of due process of law, by virtue of either the increase in membership pursuant to state law or the presence of representatives from the Counties of Gwinnett and Clayton.

6. Whether MARTA is in violation of the Urban Mass Transportation Act, specifically 49 U.S.C. § 1604(i)(3).

7. Whether the federal government has preempted the area of rapid transit funding and operation so that state law budgetary and expenditure restraints are invalid.

8. Whether the limitation on MARTA's use of sales tax proceeds for operating costs violates the supplementary home rule provision of the Georgia constitution.

### FINDINGS OF FACT

The Court finds the following to be the facts before it on plaintiffs' request for a preliminary injunction. As to most of the facts there is no real dispute.

1.

The Georgia General Assembly created MARTA in the Metropolitan Atlanta Rapid Transit Authority Act of 1965 (the "MARTA Act"), 1965 Ga.Laws, p. 2243 et seq., pursuant to authority granted to it by a 1964 amendment to the Georgia constitution, Ga.Const.1945, Art. XVII, proposed 1964 Ga.Laws, p. 1008 et seq., ratified, November 3, 1964, continued in force by Ga. Const.1976, Art. XIII, § I ¶ II.

2.

MARTA is a public body corporate which is a "joint public instrumentality of the City of Atlanta and the counties of Fulton, DeKalb, Cobb, Clayton and Gwinnett." MARTA Act § 4.

3.

The MARTA Board of Directors voted on June 23, 1980 to increase the general passenger fare for the bus/rail system to fifty (50) cents effective July 1, 1980. The vote was 8 to 4 as follows:

| For the Increase | Against the Increase |
|---|---|
| Trotter (Atlanta) | Evans (Atlanta) |
| Goldberg (Atlanta) | Wade (Atlanta) |
| Sheats (Fulton) | Lowery (Fulton) |
| Pattillo (DeKalb) | Murray (DeKalb) |
| Weitnauer (DeKalb) | |
| Glover (Clayton) | |
| Hogan (State) | |
| Strickland (State) | |

A quorum of the board is one more than a majority of the total membership of the current board; a majority vote of the members present is required for the board to act. MARTA Act § 6(h).

4.

The MARTA Act as originally enacted contemplated a Board of Directors of eleven (11) members: four (4) representing the City of Atlanta, two (2) representing Fulton County, two (2) representing DeKalb County, one (1) representing Cobb County, one (1) representing Clayton County and one (1) representing Gwinnett County. MARTA Act § 6(a). A prerequisite to a local government's representation on that board, however, was approval by its voters of a referendum on the question of whether that local government should participate further in MARTA. MARTA Act § 6(b). On June 16, 1965, the voters of Fulton, DeKalb, Clayton and Gwinnett Counties approved further participation in MARTA, and the voters of Cobb County voted against fur-

ther participation. The Georgia General Assembly confirmed participation in MARTA by the counties which approved the referendum and the City of Atlanta. 1966 Ga.Laws, p. 3264. Cobb County was deemed to have declined membership on the MARTA Board of Directors, MARTA Act § 6(b), and the MARTA Board of Directors therefore originally had ten (10) members.

5.

In 1976 the Georgia General Assembly amended § 6(a) of the MARTA Act to add four members to the MARTA Board of Directors. One (1) additional member representing DeKalb County was placed on the board along with three (3) *ex officio* members from the State of Georgia. The state representatives are the Commissioner of the Department of Transportation, the State Revenue Commissioner and the Executive Director of the State Properties Commission.

6.

The MARTA Board of Directors has the sole authority to determine transit fares. The MARTA Act as originally enacted and as amended, provides

The Board shall determine by itself exclusively after public hearings as hereinafter provided, the routes, types of construction, equipment, and facilities to be operated by the Authority, the scheduled services to be made available to the public and, except for the rates, fares, rentals, and charges for charter, group, and party bus services .... the amounts to be charged therefor.

MARTA Act § 9(c). The Board may not delegate the determination of transit fares to any other person or body under any circumstances. MARTA Act § 9(e).

7.

The MARTA Act, as originally enacted and as amended, requires MARTA to fix fares and other charges, including revenues received from local governments, so that when added to other grants or funds available to it the amounts will be sufficient for payment of all its costs and expenses. MARTA Act § 9(a).

8.

In 1979 the Georgia General Assembly amended the MARTA Act to provide that not later than 120 days after the end of each fiscal year, the Board of Directors shall adjust the amounts to be charged for transportation services to the public so that the total funds to be received from transit operating revenue, including transit fares, during each fiscal year beginning with the 1981 fiscal year is no less than thirty-five percent of the operating costs of the system for the immediately preceding fiscal year. If the amounts charged for transportation services in any fiscal year result in transit operating revenues which are less than 35% of the operating costs of the system for the immediately preceding fiscal year, the amounts to be charged for transportation services in the next fiscal year shall be sufficient, along with other transit operating revenue, to make up the difference. MARTA Act § 9(h)(1).

9.

In 1979 the Georgia General Assembly amended the MARTA Act to provide that no more than 50% of the annual proceeds of the 1% sales tax levied by Fulton and DeKalb Counties may be used to subsidize operating costs of the MARTA system. MARTA Act § 25(i).

10.

On September 1, 1971, MARTA, the City of Atlanta and Fulton, DeKalb, Clayton and Gwinnett Counties executed the Rapid Transit Contract and Assistance Agreement. The agreement is binding on the local governments which are parties to it only after their voters approve the agreement in a referendum. MARTA Act § 24(e), as amended. In 1971, the voters of Fulton and DeKalb Counties, which include the City of Atlanta, approved the Rapid Transit Contract and Assistance Agreement, thereby becoming financial participants in MARTA and authorized to levy a 1% sales tax to fulfill their obligations under the agreement. MARTA Act §§ 24 and 25, as amended.

**11.**

MARTA has contracted with the City of Atlanta, Fulton County and DeKalb County that it shall

to the extent practicable, prescribe, revise and collect such rates, fees and charges for transportation so that, together with any other income and available funds, it will be able to fulfill its budgeted obligations.

Rapid Transit Contract and Assistance Agreement, ¶ 1(d).

**12.**

MARTA has contracted with the City of Atlanta, Fulton County and DeKalb County to

comply with the provisions of all pertinent laws now in existence or hereafter enacted which relate to its budget or budgeting procedure.

Rapid Transit Contract and Assistance Agreement ¶ 1(e).

**13.**

The Rapid Transit Contract and Assistance Agreement provides for deviations from the Engineering Report, a document dated September, 1971 which consists of preliminary plans and recommendations for the acquisition, construction and improvement of the transit system. The Rapid Transit Contract and Assistance Agreement requires that certain substantial deviations from the Engineering Report be submitted to and approved by the local governments. §§ 4(d), 5.

**14.**

The Engineering Report referred to in the Rapid Transit Contract and Assistance Agreement provides with respect to fares that "the policy is one of low fares, virtually removing any cost barrier to the use of the system." Engineering Report § 6.2.1. The Engineering Report refers to the MARTA Board of Directors' "Resolution Regarding Fare Policy" of August 9, 1971, which stated in part that

The Board is committed to a policy of maintaining fares to be charged on the System approved today at the lowest pos-

sible rate considering all relevant matters. The Board cannot adopt a fare without reference to all of the financial commitments and resources involved in the acquisition, construction and operation of the System.

**15.**

MARTA did not submit the proposed fare increase to the local governments for approval.

**16.**

The Urban Mass Transportation Act requires that, in order to receive certain grant funds, MARTA give assurances satisfactory to the Secretary of Transportation that it will not change any fare except

(A) after having held public hearings or having afforded an adequate opportunity for such hearings, after adequate public notice, (B) after having given proper consideration to views and comments expressed in such hearings, and (C) after having given consideration to the effect on energy conservation, and the economic, environmental, and social impact of the change in such fare...

49 U.S.C. § 1604(i)(3).

**17.**

MARTA submitted the assurances required by 49 U.S.C. § 1604(i)(3) to the regional director of the Urban Mass Transportation Administration, and they were found to be satisfactory. The regional director testified that the requirement of federal law for the approval for receipt of certain grant funds is that the assurances be submitted. His staff did not look beyond the assurances to determine whether MARTA in fact held public hearings and gave consideration to the effects of its proposed fare increase.

**18.**

MARTA held public hearings regarding the proposed fare increase, and the MARTA Board of Directors gave at least informal consideration to the effect of a fare increase on energy conservation and its economic, environmental and social impact.

## CONCLUSIONS OF LAW

### 1.

■ The dilution of the City of Atlanta's representation on the MARTA Board of Directors is not a denial of equal protection of the laws or due process of law. In *Sailors v. Board of Education of the County of Kent*, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967), the Supreme Court held that state or local officers of a nonlegislative character may be chosen by means other than election and that in such a case the constitutional requirement as to proportional representation, the principle of "one man, one vote," has no relevancy. 387 U.S. at 111, 87 S.Ct. at 1553.

### 2.

■ The proposed increase in the fare for the MARTA bus/rail system is not a denial of equal protection of the laws to citizens of Atlanta on the ground that those individuals earn less than individuals who live in the suburbs surrounding the city. Plaintiffs have not established a wealth classification by showing a fairly definable class and an absolute deprivation of a benefit, nor have they shown direct or indirect interference with a fundamental, constitutionally protected right as required by *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

### 3.

■ A fare increase without approval by the City of Atlanta and Fulton and DeKalb Counties would not violate ¶ 4(d) of the Rapid Transit Contract and Assistance Agreement. By its terms ¶ 4(d) refers to acquisition, construction and improvement of the MARTA system. MARTA's responsibilities with respect to fares are provided for elsewhere in the agreement without mention of local government approval, and the agreement refers to the MARTA Act in which MARTA's Board of Directors is given sole responsibility for determining the fare. MARTA Act § 9(c), (e).

### 4.

■ The state laws which increased membership on the MARTA Board of Directors and which imposed budgetary and expenditure restraints on MARTA do not impair any obligation of the Rapid Transit Contract and Assistance Agreement in violation of the United States Constitution. Under *United States Trust Co. v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977), plaintiffs would have to show, first, that the laws specifically impaired or changed a contractual obligation or covenant and, second, that the impairment was one prohibited by the Constitution. Plaintiffs have not made the first showing. There are no covenants in the Rapid Transit Contract and Assistance Agreement regarding the size of the MARTA Board, and in the agreement MARTA specifically covenants to comply with subsequent state laws regarding its budget. Furthermore, the agreement by its terms contemplates amendments to the MARTA Act generally.

Plaintiffs contend that the budgetary and expenditure restraints impair MARTA's covenant in ¶ 1(a) of the Rapid Transit Contract and Assistance Agreement to acquire, construct, improve, operate and maintain a transit system as rapidly as its financial resources will permit. This Court finds that state law does not impair this obligation. Plaintiffs additionally contend that state law requires MARTA to violate its commitment to a low transit fare. MARTA has no contractual obligation to provide a low fare, however; the resolution of its Board of Directors and the provision in the Engineering Report are statements of policy. Furthermore, it is entirely possible that the proposed fare is the lowest fare MARTA is able to charge.

### 5.

■ The representatives of Clayton and Gwinnett Counties are lawful members of the MARTA Board of Directors because in 1965 the voters of those counties approved a referendum on the issue of further participation in MARTA. MARTA Act § 6, as originally enacted. The provision for membership on the MARTA Board of Directors

on the basis of approval of further participation in MARTA without a commitment to financial participation has been held to be within the broad discretion of the Georgia General Assembly. *NAACP v. MARTA,* Civil Action No. C–59456 (Fulton County Sup.Ct. May 16, 1980). *See also Bryan v. Georgia Public Service Commission,* 238 Ga. 572, 234 S.E.2d 784 (1977). For the same reason the presence of the *ex officio* state members on the board was held valid in the *NAACP v. MARTA* case, to which the principal parties in this action were parties. This Court finds that the addition of the DeKalb County representative to the MARTA Board of Directors in 1976 was likewise within the discretion of the legislature. The board is found to be legally constituted and plaintiffs' claim that its actions are invalid is without merit.

### 6.

■ MARTA complied with the requirement of 49 U.S.C. § 1604(i)(3) that it supply certain assurances to the Secretary of Transportation. MARTA held public hearings on the issue of the proposed fare increase, and it appears to have given proper consideration to the views and comments expressed there. Further, it appears to the Court from the testimony it received that MARTA in fact considered the effect on energy conservation and the economic, environmental and social impact of a fare increase.

### 7.

■ Plaintiffs contend that the state law budgetary and expenditure restraints render any public hearings on a proposed fare increase a nullity because they lock MARTA into fare increases despite public opinion. This Court finds that the state laws do not preclude pursuit of possibilities for avoiding a fare increase when the results of public hearings indicate that would be appropriate. Plaintiffs' claim that the state laws conflict with the requirements of 49 U.S.C. § 1604(i)(3) and are therefore invalid under the Supremacy Clause of the United States Constitution is without merit.

### 8.

■ The Court finds no conflict between the amendment to the MARTA Act which limits the use of sales tax proceeds for operating costs and the provision in Ga. Code Ann. § 2–6102 that

In addition to and supplementary of any powers now conferred upon and possessed by any county, municipality, or any combination thereof, any county, any municipality and any combination of any such political subdivisions may exercise the following powers and provide the following services:

.    .    .    .    .

(10) Public transportation system.

For a Georgia law to be found in violation of the Georgia constitution, a conflict must be clear. *Bryan v. Georgia Public Service Commission, supra.* This Court accordingly finds that the amendment to the MARTA Act does not violate the "supplementary home rule" provision of the Georgia constitution.

On the basis of the foregoing conclusions of law, this Court finds that plaintiffs have not shown a substantial likelihood that they will succeed on the merits of their case. Since such a showing must be made in order for the Court to grant preliminary injunctive relief, *Canal Authority v. Callaway, supra,* the request of plaintiffs for a preliminary injunction against an increase in the general passenger fare for the MARTA bus/rail system must be denied.

### ORDER

Plaintiffs' request for a preliminary injunction against MARTA's proposed increase in the general passenger fare for the bus/rail system is presently before this Court. In determining whether plaintiffs have made the showing required by law in order for the Court to grant preliminary injunctive relief, the Court has considered the numerous briefs submitted by the parties and the intervenors in this action along with the argument, testimony and documentary evidence presented on July 3, 1980 at the hearing on the request for a preliminary injunction.

For the reasons set forth in the findings and conclusions which accompany this order, this Court finds that plaintiffs have not shown that there is a substantial likelihood that they will prevail on the legal merits of this case. Accordingly, the Court is required by law to deny the request for a preliminary injunction against an increase in the MARTA fare, and the temporary restraining order issued on June 30, 1980, must be dissolved.

However, it is this Court's positive duty to advance this case to a just, inexpensive and expeditious resolution. The legal formula to be applied here permits only recovery of all or nothing, whereas a more equitable result may be a verdict somewhere in between. The Court directs the parties to continue their good faith efforts to effect a sane compromise of what is obviously the public's business. The *ad hoc* committee appointed by the Court is requested to lend assistance to the parties for this purpose as they may request. The Court suggests that MARTA give serious consideration to a reasonable delay of the proposed fare hike and, particularly, as to how the burden of that hike on the poor can be lessened, before it exercises its legal right to increase its fare.

The Court expresses its appreciation to the *ad hoc* committee and its chairperson, Jesse Hill, for the substantial progress they have made within a very limited time towards resolution of this issue. Additional sources of funds are now available to MARTA, new ideas have been submitted for MARTA's consideration, further funding may be possible, and a more cooperative spirit exists, all as a result of their efforts and dedication.

The order temporarily restraining any increase in the fare for the MARTA bus/rail system is hereby DISSOLVED, and the request of plaintiffs for a preliminary injunction against a fare increase is hereby DENIED.